SHUE *v.* SHUE.

Opinion delivered February 4, 1924.

1. DIVORCE—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—In an action for divorce, a finding of the chancellor that plaintiff had no legal grounds for deserting defendant, and that, on this account, her complaint should be dismissed for want of equity, and a divorce be granted to defendant on his cross-complaint for desertion, *held* sustained by the evidence.

2. DIVORCE—FATHER'S DUTY TO SUPPORT CHILDREN.—The fact that a husband was granted a divorce from his wife does not relieve him from the obligation to support his minor children.

3. DIVORCE—ALLOWANCE FOR SUPPORT OF CHILDREN.—The chancery court, in its discretion, may increase the allowance made in favor

of minor children as they grow older and need more money for their support and education.

Appeal from Woodruff Chancery Court, Northern District; *A. L. Hutchins,* Chancellor; affirmed.

*Harry M. Woods* and *W. J. Dungan,* for appellant.

*R. M. Hutchins,* for appellee.

HART, J. Lula Shue brought this suit in equity against her husband, Charley Shue, to obtain a divorce on the ground of cruel treatment and indignities which rendered her condition in life intolerable.

Her husband denied the allegations of her complaint, and filed a cross-complaint asking for a divorce from her on the ground of desertion.

The parties were married in Woodruff County, Arkansas, in February, 1907, and lived in that county as husband and wife until they separated in February, 1919. The present suit was commenced by the wife on the 28th day of September, 1921. Some eight years ago she brought a suit for divorce against her husband, but dismissed it. They have two girl children, aged, respectively, eleven and fourteen years.

According to the testimony of the wife and her witnesses, her husband cursed and abused her until her condition in life became intolerable, and then commanded her to leave him, which she did in about two weeks thereafter, which was as soon as she could obtain another home.

On the other hand, according to the testimony of the husband and his witnesses, he treated his wife kindly, and only upbraided her on the occasion in question, because she refused to turn off a cook of questionable character. He claimed that he was annoyed by his wife's keeping in their hotel and restaurant women of lewd character.

The chancellor found that the allegations of the complaint as to cruel treatment were not sustained by the proof, and the complaint of the plaintiff was dismissed for want of equity. The chancellor further found that the allegations of the husband in the cross-complaint for

desertion were sustained by the proof, and he was awarded a decree of divorce. The two girls were placed in the custody of the mother, and the father was ordered to pay $7.50 per month toward the support of each of the children until the further orders of the court. The court retained jurisdiction of the cause to make any further orders that might become necessary. The plaintiff has duly prosecuted an appeal to this court.

On the whole case we are of the opinion that the decree of the chancellor cannot be said to be against the preponderance of the evidence, and it cannot therefore be disturbed upon appeal.

When the parties first married they lived on a farm of the husband, several miles from any town. Subsequently they moved to the town of McCrory, where the wife operated a restaurant and small grocery store. Later on there were rooms for lodgers in connection with the restaurant. The parties seemed to have got along very well together until after they moved to town.

According to the testimony of the wife, her husband often cursed and abused her, and on one occasion, after cursing her, grabbed her by the hair and hurt her until she had to scream for assistance. The town marshal came in and separated them. Her testimony in this respect is corroborated by the marshal, who testified that this occurrence was about a year and a half before their final separation.

The plaintiff admitted that, on the night her husband ordered her to leave, in February, 1919, he became angry because she would not turn off a cook. They went home from the restaurant separately that night, and slept in the same room, but in different beds. The wife did not leave for two weeks thereafter, because she could not secure a suitable home. She said that perhaps she would have continued to live with her husband after this if he had asked her to do so.

According to the evidence of the husband, he complained about the cook because she was of lewd character, and he did not want that kind of a person staying

with them.   He said that his wife was in the habit of having women of questionable character working in the restaurant, and that he frequently complained about that, but otherwise treated his wife well.

Other witnesses for the defendant testified that the plaintiff kept lewd women working for her in the restaurant and hotel, and permitted lewd people to room there.   The witnesses testified that they had frequently seen women sitting in the laps of men in the hotel, and had heard them cursing and using other bad language.

It seems to be pretty well established that both the husband and wife were accustomed to using profane language, and were of rather coarse temperament.   We think that it is fairly inferable that the abuse and cursing done by the husband was for the most part attributable to the fact that his wife kept women of questionable character as servants in the restaurant and lodging-house.   The last row that they had, which culminated in her leaving home, resulted from his demand that she turn off a cook whom he considered to be a woman of lewd character. The fact that she stayed in the same room that night, and that she did not leave for two weeks thereafter, tends to show that her condition in life had not become intolerable on account of the abuse and ill treatment of her husband; but that she, on the other hand, bore his complaints and abuse about the character of her servants with equanimity.   No useful purpose could be served by setting out all of the testimony and reviewing it in this opinion.   We deem it sufficient to say that we have considered carefully the evidence of the whole case, and do not think that the chancellor erred in finding that the plaintiff had no legal grounds for deserting the defendant, and that, on this account, her complaint should be dismissed for want of equity and a divorce granted to him upon his cross-complaint.

It is finally contended that the chancellor erred in directing the plaintiff to pay to the defendant the sum of $7.50 per month each for the support of the two children. This part of the decree is evidently a clerical misprision.

The court intended to direct the defendant to pay to the plaintiff the sum of $7.50 per month toward the support of each of the children. The decree might have been corrected in the court below, upon motion.

In this connection we deem it proper to say that the father is under a legal obligation to support and educate his minor children, and the granting of a divorce to him from his wife does not relieve the father of his obligations to support them. The father must continue to furnish them a maintenance out of his estate, regard being had to his means and condition in life. *Holt* v. *Holt*, 42 Ark. 495, and *Gulley* v. *Gulley* (Tex.), 15 A. L. R. p. 564.

In a case-note to 15 A. L. R., at p. 569, it is said that the rule, supported by the weight of authority, is that a father is not released from his obligation to support or contribute to the support of his infant children by reason of the fact that the mother has been granted an absolute decree of divorce from him, and has been awarded the custody of the children by a decree making no provision for their maintenance. Many decisions from numerous courts of last resort in the United States are cited in support of the rule. The principle is the same, whether the divorce is granted to the husband or wife.

The father has made no complaint in this case that the custody of the children has been awarded to the mother, and, as they grow older and need more money for their support and education, the chancery court may, in its discretion, increase the allowance made in their favor.

The case at bar was very close upon the facts, and the cost of this appeal will, in the exercise of our discretion, be taxed against the husband.

It follows that the decree will be affirmed.