BOCKMAN *v.* BOCKMAN.

4-6388 151 S. W. 2d 99

Opinion delivered May 26, 1941.

*A. M. Coates,* for appellant.

*A. D. Whitehead,* for appellee.

HUMPHREYS, J. On November 22, 1940, appellee brought suit for maintenance of herself and child against appellant, in the chancery court of Phillips county, alleging that they were married on December 24, 1925, and that a boy child was born to them who is now twelve years of age, and that appellant, although able to do so, refuses to further contribute to their support.

Appellant filed an answer admitting the duty rests upon him to contribute a reasonable amount toward the support of the child, but denies any liability to support appellee for the reason that she has failed and refused to come from New York, where she resides, to West Hel-

ena and reside with him in accordance with her promise to do so when he came to Arkansas to establish himself as an eclectic physician on the 30th day of May, 1937, and, by way of cross-complaint, prays that he be granted a divorce from appellee on the ground that they have voluntarily lived separate and apart for more than a period of three years, and that under the laws of the State of Arkansas he is entitled to a dissolution of the bonds of matrimony.

The cause was submitted to the court upon the pleadings and testimony resulting in a decree denying appellant a divorce and requiring him to pay appellee $20 per week toward the support of their child, from which is this appeal.

Appellee and appellant testified at length and were the only witnesses who testified in the case. Although their testimony is quite lengthy it is only necessary to relate a few of the facts in order to determine the issues involved on this appeal. Those facts are, in substance, as follows:

Appellant was an eclectic physician and appellee a professional nurse at the time they were married. They became interested with several other physicians in establishing the Bryon Compensation Clinic in New York City. Together they accumulated about $12,000 or more which was deposited in a bank in that city, a part of it being in a checking account and a part in a savings account. The clinic was finally dissolved after considerable litigation and it became necessary for appellant to secure a new location. He took several thousand dollars and moved to West Helena leaving his wife and boy in New York until he could establish himself, under an agreement with appellee that as soon as he could secure a sufficient clientele to justify him in doing so he would send for appellee and their son. In the meantime, appellee obtained employment as superintendent in the Women's Hospital at Brooklyn, New York, and has earned an average salary of $175 a month, now raised to $200 a month. She expended the money that was in the bank after paying considerable to lawyers and her earnings in the support of

herself and child. The child was afflicted and it took a great deal of money to support them. At the time of the trial appellant was making out of his medical profession an average of about $150 a month out of which he had to pay office rent, employ an assistant and his own living expenses. After leaving New York appellant sent appellee about $150 in small amounts from time to time. Neither appellant nor appellee had been able to accumulate any property and about all that either had when the case was tried was what they earned. Appellant had his practice and appellee had her position.

After appellant came to West Helena, he and appellee corresponded, but finally he ceased to write to her. Just when they ceased to correspond does not appear from the record. Until they ceased to correspond, they had regarded their relationship as that of husband and wife. He was in West Helena, for the purpose of establishing himself in the medical profession, and she was waiting in Brooklyn, New York, for appellant to send for them.

Appellant contends that the court erred in refusing to grant him a divorce under § 7 of act 20 of the Acts of the General Assembly of 1939, which is as follows: "Where either husband or wife have lived separate and apart from the other for three consecutive years, without cohabitation, the court shall grant an absolute decree of divorce on the suit of either party, whether such separation was the voluntary act or by the mutual consent of the parties, and the question of who is the injured party, shall be considered only in the settlement of the property rights of the parties and the question of alimony."

Appellant assumes and argues that when he left for West Helena with the understanding that after he established himself, appellee and his son would come to him, it constituted a separation as of date March 30, 1927, by mutual consent or voluntary act, and since they had not actually lived together for more than three years before he filed his cross-complaint, he was entitled to a divorce under § 7 of the act. This would be true if they separated

as husband and wife voluntarily or by mutual consent or for any other reason when he came to West Helena. According to the testimony of both of them there was no separation as husband and wife at that time. The relationship of husband and wife was to continue and did continue until all of a sudden he ceased to write to her. They regarded themselves as husband and wife until they ceased to correspond with each other. The record does not show when this occurred. The burden was upon appellant to show when the separation as husband and wife began and that it had continued for three consecutive years from that date prior to filing his cross-complaint. He did not meet this burden and thereby bring himself within the terms of the act.

Appellant also contends that the court erred in allowing appellee $20 a week for the support and maintenance of the child. Of course if the needs of the child alone were considered the allowance was not unreasonable, it appearing that the child was afflicted and needs special care and expensive treatment, and the duty rests upon the father to provide for his child or children as far as he has ability to do so. Not only the needs of the child must be considered, but the ability of the father to contribute and the extent thereof must also be considered.

The trial court found that appellant earned $150 a month gross out of his profession. The record reflects that his earning ability is all he has. He owns no real or personal property. He operates a small clinic in three rooms which he rents. He employs a maid to assist him at the clinic. The amount he pays for rent, utilities and to the maid is not disclosed by the record. His clientele is largely composed of day laborers who pay him by small orders on the mill where they work.

If the order of the court is affirmed, and appellant is compelled to pay appellee $80 a month out of his gross earnings, it only leaves him about $70 to pay his office rent, utilities, and his assistant, to say nothing of his own living expenses, necessarily including board, clothes, and transportation to visit his patients.

The custody of the child was awarded to appellee who earns $200 a month net. Of course it is not her pri-

mary duty to support the child, but her love for him will prompt her to assist in providing for his needs. The boy will not suffer in any event if the amount allowed by the court is reduced to $30 a month. We think an allowance of $30 a month under all the circumstances is about as much as appellant will be able to pay out of his earnings and live himself.

The decree is modified so as to allow appellee $30 a month for the support and maintenance of the child, and as modified is in all things affirmed.