WATNICK v. BOCKMAN.

4-7814                                          192 S. W. 2d 131

Opinion delivered February 4, 1946.

*A. D. Whitehead,* for appellant.

*K. T. Sutton,* for appellee.

ED. F. McFADDIN, Justice. This appeal is an effort by the appellant to secure a court order for increase of monthly allowance to be paid by appellee for the care and upkeep of their child.

The parties are not strangers to court proceedings. They were before this court in *Bockman* v. *Bockman,* 202 Ark. 585, 151 S. W. 2d 99, and also in 204 Ark. 891, 165 S. W. 2d 256. In both of these cases, Dr. Bockman (appellee in the present appeal) was denied a divorce and ordered to pay Mrs. Bockman (appellant in the present appeal) the sum of $30 per month for the support of their child, named Sanford Bockman, and referred to herein as "Sandy," a boy now about sixteen years of age. But on February 23, 1944, Dr. Bockman obtained a divorce decree in the Phillips chancery court in a new suit based on three years' separation under Act 20 of 1939; and from that decree, there was no appeal. In the decree of February 23, 1944, Mrs. Miriam Bockman was allowed to resume her maiden name of Watnick: she is, therefore, referred to herein as Mrs. Bockman-Watnick. The 1944 decree was based on findings which recited, in part:

"The court further finds that there was born to the plaintiff and cross-complainant as a result of said marriage one child, Sanford Bockman, now aged fifteen (15) years, and that said child is in the custody of the cross-complainant, Miriam Bockman.

"The court further finds that the plaintiff, James Bockman, is a fit person for the rearing and education of said Sanford Bockman and that it is to the interest

of said child that the plaintiff be awarded custody effective June 1, 1944.

"The court further finds that the plaintiff, James Bockman, is to continue payments of the sum of $30 per month towards the support of said Sanford, the same to cease on June 1, 1944 at which time the plaintiff is to assume custody of said child."

At the time of the said decree Mrs. Bockman-Watnick held, and continues to hold a most responsible position, being superintendent of nurses in the Brooklyn Woman's Hospital in Brooklyn, N. Y., and earning approximately $300 per month. She maintained a four-room apartment in Brooklyn in order that her son, Sandy, could be with her, and attend a high school in Brooklyn. By the terms of said decree, Sandy was to come to Helena, Arkansas, on June 1, 1944, to make his home with his father; but this trip was delayed by consent of the parties until after June 30th because of Sandy's schooling. On June 6, 1944, we find Sandy writing his father, asking him to send the ticket "any time after June 30th, but make it soon."

Sandy reached Helena on July 6, 1944, and remained with his father until August 31, 1944, when his father sent him back to Brooklyn to spend the winter with his mother, and to attend Jefferson High School in Brooklyn. Evidently, Dr. Bockman concluded that this was best for the boy; and we believe it was. Sandy's letters to his father impress us that Sanday is a real American boy. He wrote his father under date of April 12, 1945:

"In your letter you said I will have to register in my draft board, and if I could operate a radio I can get a Chief Petty officer in the Navy, but here is what I want to do.

"When I do register for the draft I want to go into the Army Air Force. You know I like to fly, and I want to be a pilot; everyone says I have not the math. for it but I still want to fly.

"I can be a gunner or something in that line because a gunner is not as hard as a pilot; but I would rather

be a gunner in the Navy, because the Navy has two or three men in a plane but the Army has from five to ten men. Why I don't like the Navy is that I would not like to crash at sea; I would rather crash on land if I do ever crash. . . .''

There is not a line of evidence in the record that indicates that either parent is trying to prejudice the boy against the other. All the evidence points to the conclusion that both parents are placing the welfare of Sandy as the matter of prime importance. The fact that the mother—notwithstanding her love for her boy—was willing to have the court decree the custody to the father, shows her splendid attitude. The fact that the father—armed with the legal custody—was willing for the boy to be in Brooklyn with his mother on account of schooling, etc., shows the father's splendid attitude.

What, then, causes this controversy? It is this: When Dr. Bockman sent Sandy to Mrs. Bockman-Watnick on August 31 1944, he offered to pay her only $30 per month for the care and upkeep of Sandy for the time he was with his mother, evidently basing this figure on the opinion of this court in the former cases. Mrs. Bockman-Watnick refused this amount as wholly inadequate, and filed a petition on November 28, 1944, for increased allowance from that date. From the refusal of the chancery court (by decree of August 16, 1945) to increase this amount, Mrs. Bockman-Watnick brings this appeal.

We hold that she has made a good case for increased allowance. Under § 4392 of Pope's Digest, the chancery court has a continuing power to make modifications of the original allowance of maintenance, and will do so upon a showing of changed conditions. *O'Kane* v. *Lyle*, 123 Ark. 242, 185 S. W. 281; *Shue* v. *Shue*, 162 Ark. 216, 258 S. W. 128; *Wilson* v. *Wilson*, 186 Ark. 415, 53 S. W. 2d 990. See, also, 17 Am. Juris. 534. The rule is stated in bold type in 27 C. J. S. 1240: ''The amount allowed for child support is subject to modification when required by the changed condition of the parties, by increasing or reducing the amount according to the necessity of the one and the ability of the other party.''

There are two facts to be considered, being (a) the increased expenses of care and upkeep, and (b) the father's ability to pay.

(a) On the matter of increased expenses: Mrs. Bockman-Watnick showed, that if she did not have Sandy with her, then she could and would stay at the hospital and have free room and board; that, because she had Sandy with her, she was obliged to maintain a four-room apartment and a maid, at an expense in excess of $200 per month; that Sandy's food was $30 per month, and to this amount should be added spending money, clothes, shoes, and other items of expenses necessary for a sixteen-year-old boy. She should have more money. $100 per month would not be excessive for her to receive.

(b) The next question is the ability if Dr. Bockman to pay more than the $30 per month set by this court in the former appeals. In one opinion (*Bockman* v. *Bockman*, 202 Ark. 585, 151 S. W. 2d 99), we said: "Not only the needs of the child must be considered, but the ability of the father to contribute and the extent thereof must also be considered."

The amount of Dr. Bockman's present income is within his own knowledge. He parried all questions of specific increases of income, by giving only vague generalities; but there is a clear deduction from the evidence, if not an admission, that Dr. Bockman is making more money than he was making in 1941 and in 1942 when this court fixed the payments at $30 per month that he should make for Sandy's care and upkeep.

A detailed review of the evidence would prolong this opinion. We conclude from all the evidence that an increase from $30 per month to $75 per month should be made for the time Mrs. Bockman-Watnick had the care and upkeep of Sandy from November 28, 1944, until he went to Helena to be with his father in the summer of 1945. Change of custody is not sought; so the question of whether Sandy continues to stay with his mother in Brooklyn is a matter of agreement between Dr. Bockman and Mrs. Bockman-Watnick. From August 31, 1944, to November 28, 1944, Mrs. Bockman-Watnick is entitled to

the $30 per month fixed by the former order of this court; but from November 28, 1944 (the date of filing the petition for increase), to the date Sandy went to Helena in 1945 the chancery court should have allowed Mrs. Bockman-Watnick the sum of $75 per month; and the same rate of $75 per month should prevail for any other period of time thereafter that Sanday is with his mother, subject always to the chancery court changing the figure upon a showing of changed circumstances.

It follows that the decree of the chancery court refusing increased allowance is reversed; and the cause is remanded, with directions to enter a decree and proceed in accordance with this opinion. All costs are adjudged against appellee.