NICHOLAS W. RIEGLER JR. v. MARY MILLER RIEGLER

5-4259

Opinion delivered October 2, 1967

*Howell, Price & Worsham, Dale Price* and *Fletcher Jackson,* for appellant.

*H. B. Stubblefield* and *Tom Eisele,* for appellee.

GEORGE ROSE SMITH, Justice. The parties were married in 1943 and separated in 1964. In January, 1965, Mrs. Riegler obtained a decree awarding her separate maintenance and the custody of the couple's five daughters, the oldest of whom was then 18. In March, 1966, Mrs. Riegler filed suit for an absolute divorce on the ground of personal indignities. Dr. Riegler did not oppose his wife's suit for a divorce, but he did resist her claims to alimony, child support, and a share of his property. This appeal and cross appeal relate only to

those contested matters, presenting primarily questions of fact.

I. The decree awarded Mrs. Riegler alimony of $250 a month, which is to be increased to $350 when the jointly owned family residence is sold and she surrenders possession. The decree also awarded her $550 a month for the maintenance of the minor children, with a similar $100 increase upon sale of the residence. (Dr. Riegler does not now question this award.) The decree recognizes Dr. Riegler's asserted desire to provide his children with a college education and directs that if he fails to do so voluntarily the matter will be submitted to the court for decision.

Ordinarily the amount to be allowed as alimony and child support lies within the sound discretion of the chancellor. *Childers* v. *Childers*, 229 Ark. 11, 313 S. W. 2d 75 (1958). Here Dr. Riegler contends that his former wife's misconduct precludes her from any award of alimony and, alternatively, that the monthly allowance is excessive in view of her independent means and his ability to pay.

We find no abuse of the chancellor's discretion. By tacit consent the parties allowed the case to proceed in two stages. It was first submitted to the court's master in chancery as an uncontested case on the issue of the plaintiff's right to a divorce. With respect to property rights, however, the issues were reserved for an adversary hearing before the chancellor. At that hearing the chancellor refused to consider proof of Mrs. Riegler's supposed misconduct. On that point counsel made their record by offers of proof.

The chancellor rightly rejected the charge of misconduct. We have some doubt about the parties' agreed procedure, for such a two-step approach might be used to achieve a collusive divorce. In any event, however, the testimony heard by the master is not abstracted; so we are unable to compare the spouses' relative fault.

Much of the misconduct attributed to Mrs. Riegler occurred years ago and falls within the doctrine of condonation. Finally, the fact that Dr. Riegler does not question his wife's suitability to have the custody of the children confirms the view that Mrs. Riegler is of good character.

The evidence about Mrs. Riegler's independent means is in such conflict that we are unable to estimate the worth of her property with accuracy. Much of it is involved in litigation. Moreover, even if we take a liberal view of the value of Mrs. Riegler's property, her available income would still be only a small fraction of Dr. Riegler's. According to his 1965 federal income tax return, his net income, before the deduction of alimony, was $59,431.35. His federal and state income taxes totaled $26,088.72, leaving him a net income of more than $33,000. It is quite evident that the alimony and child support allowances fall well below Dr. Riegler's ability to pay. We are unwilling to modify the chancellor's award of alimony, either upward or downward.

The matter of the children's college education was deferred for a later decision. What we have to say in Part V of this opinion may be pertinent if that question comes up in the future.

II. The weight of the evidence supports the chancellor's award of a 1964 Chevrolet to the appellee. Not only is there convincing proof that Dr. Riegler gave this car to his wife, but there is no showing that the court's disposition of the car resulted in the appellee's receiving more than one-third of her husband's personal property, taken as a whole.

III. For a number of years preceding the trial Dr. Riegler practiced general medicine in partnership with his father. In attempting to arrive at the plaintiff's statutory one-third interest in the partnership property, Ark. Stat. Ann. § 34-1214 (Repl. 1962), the chancellor

made specific awards for some items, such as cash on hand and the value of partnership life insurance, and then directed that Mrs. Riegler be given a specified share of accounts receivable as they are collected in the future.

This approach to the problem is wrong. Under the Uniform Partnership Act Dr. Riegler's rights in specific partnership assets are those of a tenant in partnership. Ark. Stat. Ann. § 65-125 (Repl. 1966). A judgment creditor properly reaches that interest by means of a charging order. Section 65-128. What the chancellor should do is to determine the value of Dr. Riegler's interest in the partnership, treating the accounts receivable as assets having a provable fair net present value. That determination will result in a monetary decree in the plaintiff's favor, to be enforced, if necessary, by a charging order. We cannot make the determination ourselves on the record before us, for the proof is far from adequately developed. Further proceedings will be necessary on remand.

IV. There are two disputes about the cash value of insurance policies. One relates to policies owned by the partnership and will therefore be considered on remand, under Part III. The other concerns the value of policies owned by Dr. Riegler individually. The chancellor fixed Mrs. Riegler's interest in those policies at $8,811.38, deriving that figure from a statement of Dr. Riegler's assets prepared by his accountant. Mrs. Riegler insists that the court should have considered instead the doctor's sworn answers to interrogatories propounded to him. Those answers, however, gave the cash values as of November 26, 1965. The accountant stated the values as of May 11, 1966, the date of the divorce decree. The chancellor correctly chose the latter as the controlling date for his determination.

V. The decree for separate maintenance awarded Mrs. Riegler $600 a month "for maintenance of herself and the four children now in her custody." In the in-

terval between that decree and the one now being reviewed Mrs. Riegler spent a total of $3,187.68 for college educational expenses of her oldest daughter, who was of age when the separate maintenance decree was entered, and for similar expenses of her next daughter, who reached 18 before the rendition of the later decree. The chancellor directed Dr. Riegler to repay $2,749.00 of those outlays.

That direction was an error. Ordinarily a mother who spends more for child support than the court has allowed her cannot recover the excess, because an award of child support ought not be increased retroactively. She should apply in advance for a larger allowance. *Gant* v. *Gant,* 209 Ark. 576, 191 S. W. 2d 596 (1946). On the other hand, a father may by contract bind himself to go beyond the decree in supporting a daughter who has reached her majority. *Worthington* v. *Worthington,* 207 Ark. 185, 179 S. W. 2d 648 (1944). Mrs. Riegler insists that the proof establishes such a contract on Dr. Riegler's part.

We do not so find. Dr. Riegler testified, as most fathers would, that he wanted all his children to have a college education. We do not read his testimony, however, as embodying an agreement to pay the expenses now at issue. To the contrary, he said that if he paid for his daughters' higher education he expected them to treat him with the respect due a father and to counsel with him about their college training. He complained, among other things, that his oldest daughter had told him to go to hell and had declared that the only thing he had to do with her education was to give her the money to spend as she chose. On the proof as a whole Mrs. Riegler did not sustain the burden of proving an agreement for support over and above the allowance made by the separate maintenance decree.

VI. In 1960 Dr. and Mrs. Riegler borrowed $7,-141.25 from Mrs. Riegler's aunt, Mrs. Wagar. Both spouses signed a note for that amount, payable to Mrs.

Wagar and Mrs. Riegler jointly (apparently because the money was taken from a joint bank account that seems to have been established by Mrs. Wagar in the name of herself and Mrs. Riegler). At the trial Dr. Riegler insisted that his liability on the note was barred by limitations, but the chancellor rejected that defense, holding that Dr. Riegler's obligation on the note is still enforceable.

We disagree with that view of the problem. This issue does not involve a division of property owned by the husband. Instead, Mrs. Riegler is contending that her former husband is contractually bound to repay her for money borrowed from her aunt, who died before the trial, without regard to the fact that Mrs. Riegler is a joint maker of the note. No such cause of action was asserted by the plaintiff in her complaint or other pleadings. The proof was not developed with respect to the source of the money borrowed, the extent of the doctor's obligation, or the circumstances surrounding a part payment by Mrs. Riegler herself which is said to have tolled the statute of limitations. The evidence falls so decidedly short of sustaining Mrs. Riegler's right to recover upon the note that this aspect of the case must be decided in Dr. Riegler's favor.

VII. What we have said disposes of most of the points urged by Mrs. Riegler on cross appeal, such as her demand for more alimony and child support, for reimbursement for additional college expenses paid by her, and for an even greater recovery upon the Riegler-Wagar note. One remaining issue on cross appeal is Mrs. Riegler's request that she recover $654.95 expended by her for medical treatment for the minor children, after the entry of the separate maintenance decree. That decree, however, directed that Dr. Riegler be consulted before medical or dental expenses for his children were incurred. He was not so consulted. He testified without contradiction that he might have obtained the services of his fellow doctors either as a matter of professional

courtesy or at a reduced rate if he had been afforded an opportunity to do so. Upon that proof he cannot fairly be saddled with the charges now being asserted.

VIII. We affirm the chancellor's award of a $3,-500 attorney's fee to the appellee's counsel and allow an added $1,000 for their services in this court, to be applied upon their fee.

Affirmed in part, reversed in part, and remanded.

BYRD, J., not participating.