WORTHINGTON *v.* WORTHINGTON.

4-7338                                            179 S. W. 2d 648

Opinion delivered April 24, 1944.

186

*Ruth May Wassell,* for appellant.

*L. P. Biggs,* for appellee.

McFADDIN, J. The question at issue is the liability of a parent to support his adult daughter, and necessitates the construction and interpretation of a chancery decree directing such support.

In August, 1940, Mrs. Nan P. Worthington filed suit for divorce against C. B. Worthington on the grounds of indignities; and prayed for maintenance for their two daughters under the age of twenty-one, being Rosalind, then aged nineteen, and Helen, then aged sixteen. The defendant entered his appearance and demanded strict proof; and on August 22, 1940, a decree of divorce was entered which, in so far as maintenance was concerned stated: "It is further ordered and decreed that the defendant shall pay to the plaintiff the sum of $150 per month, the payments to be made in installments of $75 each on the first and fifteenth of each month, to and including February 1, 1941; the said payments of $150 per month to be applied as follows: $50 per month as alimony to the plaintiff and $50 for the support of each of the minor children above named. That after February 1, 1941, the payments of alimony to the plaintiff shall terminate; and that if at the date of February 1, 1941, the said Rosalind Worthington, now 19, shall be employed and self-supporting the payments of $50 per month for her maintenance shall also be terminated; and the pay-

ments of $50 per month for the support of the said Helen Ann Worthington, now 16, shall be continued until she is employed and self-supporting and shall be terminated when she does reach the state of employment and self-support."

C. B. Worthington made the payments of $150 per month to February 1, 1941, as provided in the decree; and made the payments of $100 per month until July, 1941, when Rosalind, (nineteen years of age) became self-supporting; and C. B. Worthington made the payments of $50 per month until June 1, 1943. Helen was nineteen on May 27, 1943, and had completed high school and two years in Junior College. In May, 1943, C. B. Worthington found employment for Helen Worthington that would pay her $110 per month. The work was at the Pulaski County Ration Board. C. B. Worthington testified: "I told her I thought she had reached the point where I thought she was well able and capable to take care of herself, and that I had arranged to get her a job, and told her what to do with Mr. George Howell here. He said he needed her, and he said a girl with two years of college was better than the average he had in his office . . . and he would be ready to put her to work immediately because he needed some help right then. This was about the fifteenth of May, and I paid her up until June 1."

Mr. Worthington was substantiated by Mr. George Howell, the executive secretary of the Ration Board. Miss Helen refused the employment, and C. B. Worthington refused to make any more $50 payments and this litigation ensued, being instituted by Mrs. Nan Worthington to compel the continuation of the monthly payments for Miss Helen Worthington. The trial reflected the facts as heretofore and hereinafter detailed.

The chancery court on November 22, 1943, entered a decree requiring C. B. Worthington to pay the $50 per month to November 30, 1943, and to pay $30 per month thereafter; and C. B. Worthington has prosecuted this appeal, contending that: (1) since Miss Helen was of age she could not legally require support and; (2) even

if the decree was contractual so as to require support for Miss Helen "until she was employed and self-supporting," still she was offered employment and could not refuse the offer, and still demand support. We discuss these contentions.

I. Ordinarily the legal obligation of a parent to support a normal child ceases upon majority of the child. 39 Am. J. 645, *Mo. Pac. Ry.* v. *Forman,* 196 Ark. 636, 119 S. W. 2d 747. In *Upchurch* v. *Upchurch,* 196 Ark. 324, 117 S. W. 2d 339, it was stated that there was a moral duty on a father to contribute to the support of his children even after they become of age, if the circumstances be such to make it necessary. But in the case here at bar the child was, so far as the record shows, a normal person in every respect. There was no physical or mental handicap which would imply a continuing obligation of support by the parent. Under our statute (§ 6215 of Pope's Digest) a female is considered of full age for all purposes at eighteen years of age; so when Miss Helen became eighteen years of age, the legal obligation ceased and ended, in the absence of a contract to the contrary.

But a parent can contract and bind himself to support a child past majority, and such a contract is just as binding and enforceable as any other contract. "The support of an adult child by a parent, may, of course, be the subject of contract, either expressed or implied, in which case the ordinary rules of contract law are applicable." (39 Am. J. 710.) "Contracts by one person for the support or maintenance of another are to be construed in accordance with their terms and in the light of the surrounding circumstances." (13 C. J. 554.) Assuming that the divorce decree provision for support of the children (as previously copied herein) was based on a contract, expressed or implied, we construe the decree in the light of what the parties did; and we find that the father, C. B. Worthington, certainly did support the daughters past the eighteenth birthday of each of them. Miss Rosalind was nineteen when the decree was rendered and he supported her until she received employment and became self-supporting. He likewise supported Miss Helen until

she was nineteen. So, adopting the construction and interpretation that the parties put on the decree at the time, and up to the events immediately preceding this litigation, we find no merit in the appellant's first contention, for he undertook to support Miss Helen past her majority, "until she was employed and self-supporting."

II. *Rendering Performance Impossible.* The most favorable point of view for Miss Helen Worthington is that the decree was a contract made for her benefit past her majority. As such she had a cause of action on that contract in her own right. *Chamblee* v. *McKenzie,* 31 Ark. 155; *Hecht* v. *Caughron,* 46 Ark. 132; West's Arkansas Digest, "Contracts," Key No. 187. Thus, we treat this proceeding as though it were instituted by her. In *Dunham* v. *Dunham,* 189 Ia. 802, 178 N. W. 551, the Supreme Court of Iowa held that a divorce decree between parents providing that the husband should pay the child's expenses at college until the child was self-supporting required the husband to pay the child's expenses while at college even after the child was of age; and also the court held that the child, upon reaching majority had a cause of action on the decree.

Miss Helen Worthington testified in this case, and admitted the conversation with her father, but stated that she did not want to accept the employment that her father had arranged for her so she would be employed and self-supporting. She did other work, went to New York to see her fiance,' and decided to continue at college for two more years and obtain an A. B. degree rather than accept employment and become self-supporting. There is no contention urged by appellee here that the offered employment would not have been "employment and self-supporting." Miss Helen is, thus, in the attitude of refusing to become employed and self-supporting and still demanding support from her father. Her attitude thus violates the rule of contracts that where one party refuses to perform the contract the other party is excused from the performance on his side, 13 C. J. 654. In Elliott on "Contracts," § 1914, it is stated: "It is a well settled principle of law that if by any act of one

of the parties the performance of a contract is rendered impossible, then the other party may rescind the contract. . . . Where the condition of a bond is possible at the time of making it, and, before the same can be performed, becomes impossible by act of the obligee, then the obligation is saved. If the impossibility arises directly or even indirectly from the acts of promisee, it is a sufficient excuse for nonperformance.''

In the case of *Townes* v. *Oklahoma Mill Company*, 85 Ark. 596, 109 S. W. 548, Mr. Justice McCulloch stated: ''It is an elementary principle needing no citation of authority in support, that there is no breach of a contract where performance is prevented by the conduct of the other party. The party whose own conduct prevents performance of a contract cannot complain of nonperformance.''

In 13 C. J. 647 the rule is stated: ''Performance of a contract is excused when it is prevented by acts of the opposite party, or is rendered impossible by him.'' See, also, Page on ''Contracts,'' 2d Ed., § 2918.

Miss Helen Worthington makes the plausible argument that she wants to finish college and get an A. B. degree rather than accept employment and become self-supporting. But since she is insisting on the decree as a contract in her favor then she is bound by its terms; and this decree requires the father to continue the support until she is ''employed and self-supporting'' rather than when she should finish college with an A. B. degree. The end of the father's legal responsibility to support her, as measured by the terms of the decree, was that she would be ''employed and self-supporting,'' not that she should have an A. B. degree or achieve matrimony. It would be fine if her father would see her through college. Many parents have worked long hours and made great sacrifices for a child to complete college, but these sacrifices were voluntary and an evidence of continued parental love. They were not compulsory by court order on unassumed legal obligations.

It therefore follows that when C. B. Worthington offered Helen Worthington employment so that she

would be self-supporting she could not refuse that offer and then demand further support from her father. The decree of the chancery court is, therefore, reversed and the cause dismissed.

The Chief Justice dissents.