Louella M. SCROGGINS *v.* Sammy Joe SCROGGINS
90-23                                         790 S.W.2d 157
Supreme Court of Arkansas
Opinion delivered May 29, 1990
[Rehearing denied June 25, 1990.*]

*Turner and Price, JJ., would grant rehearing.

*Jack M. Lewis*, for appellant.

*Elcan & Sprott*, by: *Frank C. Elcan II*, for appellee.

TOM GLAZE, Justice. The case involves a modification and increase in child support awarded by the trial court. The appellant argues the chancellor erred by increasing the child support only $125.00 per month, failing to award the family chart amount required under Ark.

Code Ann. § 9-12-312 (Supp. 1989), in awarding only $1,000.00 attorney's fees and in allowing appellee to pay trust funds for the college expenses of the parties' child, Letha Mae, directly to the child, college or the provider of services, rather than to the appellant. We affirm.

The parties were divorced in October of 1976 and by agreement the appellee was required to pay appellant "$400.00 per month for the support, maintenance, care, and education of the [parties' two] children." Appellee agreed to continue support "until the attainment of the childrens' majority ages, or their death, except, however, if the children are full-time students at an institution of higher learning, then until the children are 21 years of age." In 1979, the child support was increased to $475.00 per month. Apparently appellee paid the required support payments until August of 1988 when Letha Mae turned 18 years old and enrolled in college. Appellee then divided the monthly support payments by paying Letha Mae one-half, or $237.50, and the other half to the appellant for the parties' son. Appellant petitioned the court to hold the appellee in contempt, and requested an increase in child support as well as attorney's fees. The issues surrounding the divided support payments and contempt charges were resolved and are not a part of this appeal.

First, we should point out that the issues concerning the child support award, the education payments and attorney's fees were thoroughly considered by the court at several hearings. The trial court signed two separate orders containing lengthy detailed findings, that were entered respectively on October 10, 1989, and on November 7, 1989. The initial order contained four pages of findings and the second or amended order was eleven pages in length. Next, we should preliminarily note that this court has long held that ordinarily the amount of child support lies within the sound discretion of the chancellor, *Meeks* v. *Meeks*, 290 Ark. 563, 721 S.W.2d 653 (1986), and the chancellor's finding will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Grady* v. *Grady*, 295 Ark. 94, 747 S.W.2d 77 (1988).

In her first two arguments, appellant questions the $125.00 per month increase awarded by the chancellor and contends the monthly amount should be more. She argues he abused his discretion in making the award and that he failed to follow the family chart amount, as required by law.

The statutory law relied on by appellant is set out in Ark. Code Ann. § 9-12-312. That section in relevant part provides as follows:

(a)(1) When a decree is entered, the court shall make such orders concerning the alimony of the wife or the

husband and care of the children, if there are any, as are reasonable from the circumstances of the parties and the nature of the case. . . .

(2) In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the support chart, shall the presumption be rebutted.

(3) The family support chart shall be revised at least once every four (4) years by a committee to be appointed by the Chief Justice of the Arkansas Supreme Court to ensure that the support amounts are appropriate for child support awards. The committee shall also establish the criteria for deviation from use of the chart amount.

(4) The Arkansas Supreme Court shall approve the family support chart and criteria upon revision by the committee for use in this state and shall publish same through per curiam order of the court.

Appellant argues that § 9-12-312 went into effect on October 1, 1989, and because the trial court's orders here were entered on October 10 and November 7, 1989, the court failed either to apply and award the chart amounts required under § 9-12-312 or to set out its findings that would rebut the amount presumptively called for by the chart when considering appellee's income. Appellant also contends the chancellor was wrong in refusing to apply the chart because the chart amount did not extend far enough to cover the amount of appellee's income.

As already noted, the trial court awarded additional child support and no one questions that a material change in circumstances has occurred warranting such an increase. In fact, the chancellor went into great detail in his findings which reflect the appellant's monthly budget, her income and the needs of the

parties' children. After specifically setting out these monthly figures, the chancellor determined the appellant needed $592.95 above her own income in order to care for the children, and he increased child support to $600.00 per month.

Appellant, however, contends the $600.00 amount is insufficient and the amount would have been greater if the chancellor had not refused to consider the family support chart. The chancellor, in fact, did consider the chart, and in doing so, he attempted, by using figures on the existing chart amounts, to project monthly support amounts that would cover a large income such as that earned by appellee. Appellee is a physician and apparently grosses approximately $300,000.00. The court considered appellee's net annual income of $194,756.00 and calculated that the monthly chart amount would be $1,750.00 for one child. This amount deviated somewhat from the amount projected by appellant's attorney, but regardless of whose projected chart amounts were used, the chancellor proceeded to explain in written detail why such projected chart amounts were inappropriate.

In addition to appellant's monthly income and expense amounts which the chancellor detailed in his order, he specifically mentioned that appellant had presented no proof concerning any other things that the children needed or to which they were entitled, considering their station in life. The chancellor also pointed out that the appellant's budget, presented at trial, included her own living expenses, which were not segregated from the total expenses. Nor did she show the expenses of the parties' son, who lives with her or set out those lesser amounts she spends on Letha Mae, who comes home from college three or four nights per week. In fact, Letha Mae testified that she needed no increase in support. The trial court found further that the childrens' medical, orthodontia, dental and hospital expenses are provided by the appellee, and in addition the chancellor recognized that appellee had voluntarily established an irrevocable trust fund for the childrens' college education and the fund currently totaled $38,000.00 for each child. Further, the appellee provided both children with clothes, motor vehicles and provided the insurance and all maintenance costs. For these items and college expenses alone, appellee pays annually over $13,000.00 for Letha Mae only. This annual sum does not include the $600.00 support

payment appellee pays each month.

Although the chancellor expressed uncertainty as to whether § 9-12-312, as amended by Act 948 of 1989, should apply to this case, he considered and correctly applied it anyway. Indeed, he made specific findings spelling out why the support chart was inappropriate considering the pertinent factors in this case.

On February 5, 1990, we issued, in accordance with § 9-12-312(a), our per curiam which adopted the most recent weekly family support chart. *In Re: Guidelines for Child Support Enforcement*, 301 Ark. 627 (1990). In that per curiam, we stated that it shall be sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to the family support chart is correct, if the court enters in the case a written finding or specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.[1] Again, the chancellor here did just that, and we cannot say he abused his discretion when considering those factors and applying them in written detail in this case.

In connection with support payments made by appellee, the appellant also argues the chancellor erred in providing appellee could pay all college expenses directly to Letha Mae, the college or provider of services. She claims this arrangement violates the parties' earlier agreement under which appellee was required to pay appellant "for support, maintenance, care and education of the children." We disagree.

The court ordered the $600.00 monthly child support payment made by appellee must be payable to appellant and paid through the clerk of the court. Appellant still furnishes Letha Mae a room while she attends college, and certainly the appellant is entitled to those support monies that aid in underwriting Letha Mae's expenses. The chancellor, however, recognized appellee's obligation to pay Letha Mae's college expenses, and in addition to ordering appellee to do so, the chancellor determined that it was

---

[1] We noted the following relevant factors in the per curiam: food, shelter and utilities, clothing, medical and educational expenses, accustomed standard of living, insurance and transportation expenses.

unnecessary, and would unduly delay matters, to pay these expenses through the appellant. We have, of course, recognized that a contract made for the benefit, and the college expenses, of a child past its majority is a contractual right which the child, upon reaching majority, may enforce in his or her own name. *See Worthington* v. *Worthington*, 207 Ark. 185, 179 S.W.2d 648 (1944).

Here, the chancellor carefully directed appellee to pay those monthly child support monies of $600.00 to appellant which would assure that Letha Mae's ongoing monthly expenses would be met as she attended college. By the same token, the chancellor determined the appellee's payments toward Letha Mae's actual or direct college expenses should be made directly to her, the college or provider so no delay would occur. There is no evidence that this arrangement has been abused by Letha Mae or appellee. Accordingly, we find no abuse of discretion by the chancellor in this regard.

Finally, we consider appellant's contention that the trial court erred in awarding only $1,000.00 in attorney's fees. Appellant requested $2,094.20. In Ark. Code Ann. § 9-12-309(a) (Supp. 1989), the trial court is given authority during the pendency of the divorce to award a reasonable fee for the wife's or husband's attorney. Under provision (b) of that section, the court may allow either party additional attorney's fees for the enforcement of support provided in the decree. In *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987), we held that a trial court has considerable discretion in the allowance of attorney's fees in a divorce case. We have also acknowledged that the chancellor is in a better position to evaluate the services of counsel than an appellate court, and, in the absence of clear abuse, the chancellor's fixing of an attorney's fee will not be disturbed on appeal. *Id.*

Appellant points to the disparity of the parties' respective incomes when arguing she is entitled to the entire amount requested. Such factor, while relevant, cannot alone justify an award of attorney's fees. Appellant submitted an itemized bill to the chancellor and the chancellor was in a better position to analyze that statement in light of the pleadings, motions, orders, conferences and hearings filed or conducted in this matter. From our review, we cannot say the chancellor erred in awarding the

amount he did. As for appellant's request for attorney's fees in this appeal, we award an amount in the sum of $1,000.00

For the reasons stated above, we affirm the trial court in all respects.

TURNER and PRICE, JJ., dissent.

DALE PRICE, Justice, dissenting. I respectfully dissent. I am disturbed by the majority's refusal to try this case *de novo* and require the non-custodial parent to pay child support, using the chart as a guide and taking into consideration the relative ability of each party to pay.

It is shocking to me that the relative income of the parties was not given any weight, either by the chancellor or this court, in determining whether the child support chart should be applied to the non-custodial parent. In my opinion, the bench, bar and public in general need to be instructed that, for those people with incomes above $3,000 per month, the chart may be interpolated to arrive at the correct amount of support. Thereafter, if the amount of support which would normally be payable is greater than the needs of the child or children, the chancellor, by written findings, may make such reduction as is reasonable.

In this case, the mother had asked for child support to help her with her claimed monthly household budget of $2,742.95. This figure included $850 per month for the oldest child's college expenses. The chancellor found that the mother's income was $1,300 per month. The father's income was $194,756 per year, or, for chart purposes, $16,229.99 per month. The court found that the $850 should be deducted from the mother's request because the child's trust was providing for her college expenses. Next, the chancellor deducted the mother's $1,300 monthly income from the request, leaving approximately $600 in expenses not covered by her budget. That amount was assessed to the father to pay as child support.

The chancellor's holding requires the custodial parent to expend 100% of her net monthly income, meager as it is, before the non-custodial parent is required to contribute to his children's expenses. If the mother had earned an additional $600 per month, bringing her total income to $1,900 per month, under the judge's ruling, the father would contribute nothing. Common sense and

fairness dictate that this is not the intent of our support chart. It is not, or at least in my view should not be, the law with reference to child support.

The chancellor also stated that he did not use the support chart because it did not go as high as the father's earnings, but that if he had, according to his interpretation, the father would be paying $1,750 per month for one child, or a total of $3,268 per month for two children as child support. That is a far cry from $600 per month for two children.

I do not wish to conclude this dissent without applauding the father, who has set up trust funds of approximately $38,000 for each child and purchased a car and paid the insurance on it for the oldest child. He had the ability to do so, and this is as it should be. However, it should not be required that the custodial parent be expected to expend all her earnings before the non-custodial parent kicks in to supply the basic day-to-day living expenses of the children.

I would amend the *per curiam* delivered February 5, 1990, *In re: Guidelines for Child Support Enforcement*, 301 Ark. 627, 784 S.W.2d 589 (1990), to require that in cases of those noncustodial parents whose income exceeds the amounts shown on the chart, support should be increased by 10% per $100 of earnings per child, not to exceed 50%. I would also require the chancellor to take into consideration the relative disposable income of each parent in setting child support.

For these reasons, I dissent.

TURNER, J., joins the dissent.