Marcus VAN CAMP *v.* Diana K. VAN CAMP

97-1052                                        969 S.W.2d 184

Supreme Court of Arkansas
Opinion delivered May 21, 1998
[Petition for rehearing denied June 18, 1998.]

*Grider Law Firm*, by: *Murrey L. Grider*, for appellant.

*Goodwin Moore Colbert & Broadaway*, by: *Harry Truman Moore*, for appellee.

DONALD L. CORBIN, Justice. The Randolph County Chancery Court granted Appellee Diana K. Van Camp's motion to correct its previous order made pursuant to a 1991 divorce decree, which incorporated the property-settlement contract that she and Appellant Marcus Van Camp independently negotiated. This appeal was certified to us from the court of appeals, as it raises questions of interpretation and inconsistency in Arkansas case law; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(d)(2). Appellant raises one issue on appeal. We affirm.

The parties were divorced pursuant to a decree issued on May 10, 1991. The 1991 decree incorporated the parties' independently negotiated property-settlement contract, which provided for post-majority monthly support for their two sons, Shawn and Scott, contingent upon them entering college the fall semester after graduating from high school, continuing college for four consecutive years, and living with Appellee during such time. The contract provided that child support would abate during any months that the sons did not live with Appellee. The contract also provided that Appellant was responsible for additional college-related expenses for both sons.

On October 1, 1993, Appellee petitioned for an increase in Scott's monthly support, alleging a material change in circumstances, and for enforcement of other provisions under the decree related to Shawn's college expenses. After conducting a hearing on the petition on November 24, 1993, the chancellor entered an order, filed September 7, 1994, granting Appellee the expenses due under the contract for Shawn, but denying her requested increase in Scott's monthly support on the basis that there had not been a material change in circumstances. The 1994 order also

reflected a change in the contracted support for Scott, indicating that, contrary to the parties' negotiated agreement, support for Scott would continue only until age eighteen, with no provision for his support during college.

It is not disputed that neither party nor the chancellor addressed the issue of Scott's post-majority support in their pleadings, correspondence, or during the hearing. Moreover, Appellant concedes that he did not move to modify or terminate Scott's post-majority monthly support. Appellant did, however, cease making child support payments after June 1, 1996, following Scott's graduation from high school in May, notwithstanding that Scott continued to live with Appellee and began attending the University of Arkansas at Little Rock the fall after he graduated.

Upon petition by Appellee that the 1994 order was not a true and accurate reflection of what was decided during the 1993 hearing regarding Scott's post-majority support, the chancellor attempted to correct the 1994 order pursuant to ARCP Rule 60. As a result, the chancellor entered a new order on July 25, 1997, reflecting that the matter of Scott's post-majority support was not before him during the 1993 hearing, and that the 1991 decree remained effective.

Appellant argues on appeal, as he did below, that the chancellor erred by correcting the 1994 order, as such action was untimely under Rule 60(a) and (b). We disagree and hold that Rule 60 is not applicable to the facts and circumstances of this case.

Upon *de novo* review of this case, we conclude that the 1994 and 1997 orders may be read in harmony with one another, as well as with the original 1991 divorce decree. The language in the 1994 order discontinuing Scott's monthly support after he reached the age of eighteen had no effect on the parties' original child-support agreement. The issue of the post-majority support of both children was negotiated and agreed upon by both parties pursuant to an independent property-settlement agreement, which was incorporated into the 1991 divorce decree. In other words, the establishment and amount of the children's post-majority support was specifically contracted for by the parties prior to the entry of their divorce. Accordingly, under the particular facts

of this case, the chancellor had no authority to modify or alter that support.

■ Ordinarily, the legal obligation of a parent to support a child ceases upon the child's reaching majority. *Towery v. Towery*, 285 Ark. 113, 685 S.W.2d 155 (1985); *Hogue v. Hogue*, 262 Ark. 767, 561 S.W.2d 299 (1978); *Worthington v. Worthington*, 207 Ark. 185, 179 S.W.2d 648 (1944). In Arkansas, a child reaches majority at age eighteen. *Towery*, 285 Ark. 113, 685 S.W.2d 155. Where, however, a parent has elected to contractually bind himself or herself to support a child past the age of majority, such a contract is as binding and enforceable as any other contract. *Worthington*, 207 Ark. 185, 179 S.W.2d 648. In fact, a child may seek enforcement of a contract providing for post-majority support in his own behalf after he or she reaches the age of majority. *Scroggins v. Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990).

■ ■ Fundamental principles of contract law require that both parties to a contract agree to any modification of the contract. *See Leonard v. Downing*, 246 Ark. 397, 438 S.W.2d 327 (1969). Both parties must manifest assent to the modification of a contract and to the particular terms of such modification. *Id.* Here, there was no mutual agreement by the parties to the contract that the same should be modified to discontinue Scott's post-majority support. To the contrary, the issue of modifying Scott's post-majority support was never even raised by the parties. The chancellor thus had no authority to modify the terms of the Van Camps' agreement without evidence of their mutual assent to the purported modification.

■ In sum, the 1994 order purporting to terminate Appellant's legal obligation to support Scott past the age of majority, while he attended college, did not create any change in the obligations of the parties under their negotiated property-settlement agreement. It was thus not reversible error for the chancellor to "correct" that order by issuing the 1997 order reaffirming the parties' original contractual obligations. We will affirm where the chancellor reached the right result, even if based on the wrong reasons. *Marine Servs. Unlimited, Inc. v. Rakes*, 323 Ark. 757, 918 S.W.2d 132 (1996).

Affirmed.