2010 Ark. 132

**David STILLS, Appellant,**

v.

**Amber STILLS, Appellee.**

**No. 08–1352.**

Supreme Court of Arkansas.

March 18, 2010.

Rehearing Denied April 29, 2010.

---

2. Appellee Adams does not address this point on appeal.

824

Matthews, Campbell, Rhoads, McClure, Thompson & Fryauf, P.A., by: David R. Matthews and Sarah L. Waddoups, Rogers, for appellant.

Taylor Law Partners, by: William B. Putman, Fayetteville, for appellee.

JIM GUNTER, Justice.

Appellant, David Stills, appeals the circuit court's order denying his petition for change of custody, finding the parties' earlier relocation agreement unenforceable, and granting appellee's petition to relocate. On appeal, David argues that the circuit court erred in (1) refusing to enforce the parties' settlement agreement, specifically the waiver of the *Hollandsworth* presumption; (2) failing to require Amber to meet her burden of proof under the settlement agreement; (3) failing to find that Amber was equitably estopped from challenging the settlement agreement; (4) using an erroneous standard of review in deciding his change of custody petition; and (5) denying his change of custody petition. We assumed this case as one involving an issue of first impression, public interest, and needing clarification and development of the law; therefore, we have jurisdiction pursuant to Ark. Sup.Ct. R. 1-2(b)(1), (4), and (5). We affirm.

The parties in this case, Amber and David Stills, were married on April 18, 1998, and had three children.[1] The parties separated, however, on February 5, 2005, and a decree of divorce was entered on April 28, 2005. The decree granted primary custody of the children to Amber, awarded David visitation, and ordered David to pay child support, pursuant to a Property Settlement, Custody, and Support Agreement reached by the parties that was incorporated by reference into the decree. The agreement also contained a provision regarding the children's residence, in which the parties agreed that the children should grow up in Northwest Arkansas; that the children's residence would remain within twenty-five miles of the Springdale Police Department building; that Amber could change the children's residence, as long as it was still within the twenty-five mile radius; but that if Amber sought to move the children outside the twenty-five mile radius, then she would first be required to seek the approval of the court, with the court making its determination based upon the best interests of the children. The court would also be required to make a finding that David's visitation rights and his right to share in major life decisions of the children would not be diminished. The provision specifically stated that the parties were "attempting to remove what is commonly referred to by the courts of Arkansas as the *Hollingsworth* [sic] presumption from any decision of the court." According to the terms of this provision, Amber agreed that there would be no presumption in favor of her relocating outside the twenty-five mile radius and that she would bear the burden of proving to the court that it was in the best interest of the children to relocate.

On March 10, 2008, David filed a petition to restrain any move of the children, alleging that Amber had recently announced her intention to move the children to Dallas, Texas; that she had begun preparations for moving by listing her house in Rogers for sale and notifying her employer of her impending move; and that she had not sought the court's permission for such a move, as dictated by the parties' agreement. Amber filed a counter-petition to

---

1. A.S., born October 18, 1992, was adopted by the parties, and they also had two children of their own: N.S., born September 10, 1999, and M.S., born December 30, 2002.

allow relocation and for modification of custody on March 17, 2008. In her petition, Amber argued that, "should the Court find the geographical restriction and the waiver of *Hollandsworth* effective," then the court should find that it is in the children's best interest that she be allowed to relocate to Dallas.

On June 9, 2008, David filed a petition for change of custody, alleging that, since the time that the divorce decree was entered, there had been a material change of circumstances in that Amber had intentionally engaged in behavior intended to alienate David from his children; that Amber had failed to meet the children's needs to be on time and present in school; and that Amber had engaged in a pattern of cohabitation in the presence of the children. Also on June 9, David filed a petition for contempt, alleging that Amber had "willfully and wrongfully failed and refused to comply" with the terms of the divorce decree. And on June 17, 2008, David amended his response to Amber's counter-petition and asserted that Amber should be equitably estopped from seeking to circumvent or set aside the terms of the settlement agreement.

A hearing was held on August 11, 2008. After hearing extensive testimony from both parties regarding allegations of misconduct and the perceived effect that a move to Dallas would have on the children, the court made a lengthy ruling from the bench. In its ruling, the court found that David had failed to prove by a preponderance of the evidence that a substantial and material change of circumstances had occurred so as to warrant a change of custody, but that David had proven by a preponderance of the evidence that Amber had violated the court's previous order by making derogatory remarks about David in front of the children and by cohabitating with members of the opposite sex on sev-eral occasions while in the presence of the children. The court found Amber in contempt and sentenced her to four days in the county jail, but allowed her to purge herself of the contempt by paying a portion of David's attorney's fees, with the exact amount to be established later in the written order.

With regard to Amber's request to relocate, the court found that Amber's reason for relocating was not to estrange David from the children and that David had failed to rebut the presumption in favor of relocation that was established in *Hollandsworth*. The court also found that the language contained in the parties' settlement agreement, which purported to waive the *Hollandsworth* presumption, was not enforceable, and that such an agreement was not in the best interest of the children. The court ruled that the visitation schedule already in place would remain, except that David would have weekend visitation in Arkansas only one weekend per month; the remaining weekend visitation would be exercised in Texas. In addition, the court eliminated David's mid-week visitation, which was normally exercised on Wednesday nights.

On August 22, 2009, prior to a written order being entered, David filed a petition for reconsideration and/or clarification of visitation privileges, asking the court to reconsider certain aspects of the visitation schedule. There is no indication that this petition was ruled upon, however, and on August 29, 2008, a written order of the court's bench ruling was entered. This order specifically found that Amber could not legally waive the *Hollandsworth* presumption and that she could purge herself of contempt by paying attorney's fees in the amount of $1000 as well as David's filing fees. A notice of appeal from this order was entered on September 4, 2008.

This court has traditionally reviewed matters that sounded in equity de novo on the record with respect to fact questions and legal questions. *Hollandsworth v. Knyzewski,* 353 Ark. 470, 109 S.W.3d 653 (2003). We have stated repeatedly that we would not reverse a finding by a trial court in an equity case unless it was clearly erroneous. *Id.* We have further stated that a finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We also give due deference to the superior position of the chancellor to view and judge the credibility of the witnesses. *Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999).

For his first point on appeal, David asserts that the *Hollandsworth* presumption only protects Amber's right to travel and that the circuit court erroneously believed that the presumption was for the benefit of the children and could not be contracted away. David contends that the *Hollandsworth* presumption is solely for the benefit of the custodial parent, and as the custodial parent, Amber could and did voluntarily waive her right to that presumption. David argues a waiver of this presumption is akin to a defendant's waiver of a presumption of innocence, a right to counsel, and a right to a jury trial. David adds that Amber's waiver of this presumption was a knowing and intelligent waiver because she was represented by counsel, who explained the presumption to her.

In support of his position, David cites *Rownak v. Rownak,* 103 Ark.App. 258, 288 S.W.3d 672 (2008), in which the court of appeals held valid an agreement, incorporated into a divorce decree, that the parties would not promote another religion other than Protestantism to the minor children. The father later converted to the Latter–Day Saints faith and promoted that faith to the children, and the court found the father in contempt and ordered him to cease such conduct. In its decision, the court of appeals found that "the injunction about which appellant complains has for its basis a valid contract between the parties and does not violate appellant's constitutional rights." *Id.* at 261, 288 S.W.3d at 674–75. The court also cited law recognizing the "long-held right allowing parties to make their own contract and to fix its terms and conditions, which will be upheld unless illegal or in violation of public policy." *Id.* at 262, 288 S.W.3d at 675 (citing *Am. Ins. Co. v. Austin,* 178 Ark. 566, 11 S.W.2d 475 (1928)).

In addition, David cites *Van Camp v. Van Camp,* 333 Ark. 320, 969 S.W.2d 184 (1998), as an example of this court allowing enforcement of a property settlement agreement that established obligations outside of standard Arkansas law. In *Van Camp,* the divorcing parties agreed that father would pay child support beyond the children's eighteenth birthdays, provided they attended college and lived with their mother. This court held that the issue of postmajority support was negotiated and agreed upon by the parties pursuant to an independent property settlement agreement, which was incorporated into the divorce decree, and the chancellor had no authority to later modify or alter that support unless both parties agreed to a modification of the contract. In sum, David argues that *Hollandsworth* creates a sliding scale, balancing the custodial parent's right to relocate with the noncustodial parent's right to visitation, and in this case, the parties voluntarily agreed to adjust that scale. David urges that the circuit court erred in not enforcing this agreement.

In response, Amber argues that the *Hollandsworth* presumption is not a "right" that belongs to any party, but is instead a principle of substantive law that defines the burden of proof a noncustodial parent must meet in order to prove a material change in circumstance. Amber asserts that the circuit court properly adhered to the longstanding principle, reiterated in *Hollandsworth*, that the "polestar" in making a relocation determination is the best interest of the child, and the parties do not have the right to dictate whether the court will apply the relocation presumption established in *Hollandsworth*. Amber distinguishes *Rownak* by asserting that the agreement in that case was neither void nor against public policy, while the agreement in this case involved public policy considerations due to the state's interest in protecting the best interests of the child. Amber also argues that *Van Camp* is unpersuasive because it is based on established Arkansas law that a contract for postmajority support is a valid contract and enforceable by the custodial parent or the child once he or she reaches majority. In sum, Amber contends that an agreement that "barters away" the custodial parent's right to relocate is detrimental to the best interest of the children and thus against public policy.

The parties' agreement in this case was essentially an attempt to shift the burden of proof, requiring Amber to "bear the burden of proving to the Court that it is in the best interests of the minor children for her to reside outside the aforesaid 25 miles radius." However, in *Hollandsworth*, we explained that, through its case law, the court of appeals had essentially established a presumption that the relocation of the custodial parent and the child is detrimental to the best interest of the child, and the custodial parent was required to prove some "real advantage" to the child and him or herself. This court expressly rejected this position and pronounced a presumption in favor of relocation for custodial parents with primary custody. We held that the noncustodial parent should have the burden to rebut the relocation presumption and that the polestar in making a relocation determination remained the best interest of the child, which the court should determine taking the following factors into consideration:

(1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

*Hollandsworth*, 353 Ark. at 485, 109 S.W.3d at 663–64. However, we are now faced with the question of whether the parties can, by agreement, eliminate the presumption established by this court and shift the burden of proof back to the custodial parent.

A presumption is a "legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts.... A presumption shifts the burden of production or persuasion to the opposing party, who can them attempt to overcome the presumption." *Black's Law Dictionary* 1223 (8th ed.2004). In *Hollandsworth*, this court established that in relocation disputes there would be a presumption in favor of preserving the custodial relationship, in spite of relocation, and that the burden of persuasion against relocation shifted to the noncustodial parent. No doubt there were policy

considerations that influenced the establishment of the presumption, such as protecting the custodial parent's right to travel and recognizing the close link between the best interests of the custodial parent and the best interest of the child. But the presumption is, at its core, the establishment of a legal burden of proof to be enforced by the circuit courts in deciding relocation disputes. It is not a "right" that may be claimed by one party or another, nor can it be altered or waived by a party. We therefore affirm the circuit court's order finding that Amber could not legally waive the *Hollandsworth* presumption.

For his second point on appeal, David essentially asserts that Amber did not meet her burden of proof according to the settlement agreement. However, we need not address this issue, as we do not agree that the waiver provision of the settlement agreement was enforceable. And even if this court were to find that the waiver of the presumption in the settlement agreement should have been honored, we would remand for the circuit court to reconsider its decision and would not rule on whether Amber met her burden of proof under the agreement.

For his third point on appeal, David argues that Amber should be equitably estopped from challenging the waiver of the *Hollandsworth* presumption. He asserts that Amber, with the advice of counsel and full knowledge of the meaning of the waiver provision, agreed to the settlement, and that he would not have agreed to Amber having custody if not for the relocation and visitation provisions in the settlement. However, relying on her agreement with the settlement, he put himself at a disadvantage as the noncustodial parent. In response, Amber argues that David's estoppel argument fails for two reasons. First, as discussed previously, the parties are not allowed to "contract away" a burden of proof that is utilized by the courts in deciding relocation disputes. Second, even if estoppel could be applied, David failed to meet his burden of proof as to the elements of estoppel, which include: (1) the party to be estopped knew the facts; (2) the party to be estopped intended that the conduct be acted on; (3) the party asserting the estoppel was ignorant of the facts; and (4) the party asserting the estoppel relied on the other's conduct and was injured by that reliance. *Felton v. Rebsamen Med. Ctr., Inc.*, 373 Ark. 472, 284 S.W.3d 486 (2008). Specifically, Amber contends that David fails on the third element because the parties were aware at the time they entered the agreement that its enforceability was in doubt. David testified that he knew the issue of waiving the presumption had not been decided by the courts, and the circuit judge, who also presided over the divorce, told the parties that the provision may not be enforceable.[2] We need not address David's argument on this point, however, because we find that David failed to obtain a ruling on this point and therefore the argument is not preserved for our review. *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001) (failure to obtain a ruling from the trial court is a procedural bar to our consideration of the issue on appeal).

For his fourth point on appeal, David argues that the circuit court applied an erroneous standard of review in deciding his petition for change of custody.

---

**2.** In his reply, David argues that he was not present when the agreement was presented to the court and the decree was entered, so he was not aware of the court's statement that the waiver may not be enforceable. However, David voluntarily waived his right to appear, and he cannot now use his absence as an excuse for ignorance of the facts.

David asserts that the circuit court required him to show that it was "impossible" for Amber "to continue" in her role as the custodial parent, instead of using the correct "material change of circumstances" standard. David asserts that, had the court employed the correct standard, it would have found a material change of circumstances and granted his change of custody petition. In response, Amber argues that David's argument isolates language used by the court in its bench ruling out of context, and taking the court's ruling as a whole, it is clear that the court understood the correct burden of proof.

▉ In its bench ruling, the court stated:

> For custody to be changed, the party seeking a change of custody must prove that there has been a material change in circumstances since the entry of the last order touching on custody to the extent that it is impossible for the custodial parent to continue in that role when you look at it from the standpoint of the best interests of the children.

While worded differently, this standard articulated by the court does not materially vary in meaning from the standard established by this court, which places the burden on the noncustodial parent to prove a material change of circumstances such that a modification of the custody decree is in the best interest of the child. *Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009). We also note that the written order clearly shows that David had "failed to prove by a preponderance of the evidence that substantial and material change in circumstance has occurred as it relates to the issue of custody since entry of the Decree of Divorce." To the extent that the court's bench ruling conflicts with its written order, if at all, the written order controls over the court's oral ruling. *Nat'l*

*Home Ctrs., Inc. v. Coleman*, 370 Ark. 119, 257 S.W.3d 862 (2007).

▉ Finally, for his fifth point on appeal, David argues that the circuit court erred in denying his request for a change of custody. As explained above, a judicial award of custody will not be modified unless it is shown that the circumstances have changed such that a modification of the decree would be in the best interest of the child. *Stehle, supra.* This court has stated that courts generally impose more stringent standards for modification in custody than for initial determinations of custody in order to promote stability and continuity in the life of the child. *Id.* The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.*

David first argues that there was "ample evidence" showing a material change in circumstances based on alienation and recounts numerous incidents, which he testified to at the hearing, of Amber's interference with his visitation and attempts to alienate him from the children. He analogizes the present case to *Sharp v. Keeler*, 99 Ark.App. 42, 256 S.W.3d 528 (2007), in which the court of appeals upheld a change of custody to the father based on a pattern of alienation on the part of the mother. In response, Amber argues that the evidence in this case comes nowhere near the serious and systematic parental alienation that was present in *Sharp*, and that while the court did find merit to some of David's allegations of misconduct, the court also found that there was no evidence of permanent damage to David's relationship with the children and that a finding of contempt was the more appropriate remedy. Considering the deference we give to the circuit court in these matters, due to its superior position to view and judge the credibility of the witnesses, *Hamilton, supra*, we find no error in the circuit court's

conclusion that David failed to prove a material change of circumstances with regard to parental alienation.

■ Second, David argues that, "[e]ven assuming that the circuit court was correct in disregarding the parties [sic] Agreement, the relocation to Texas was not in the children's best interests and should not have been authorized." While contained within his argument regarding the denial of his change of custody, this is clearly an argument challenging the relocation decision and not the custody determination. As explained previously, we will not reverse a finding by a trial court in an equity case unless it is clearly erroneous. *Hollandsworth, supra.* A finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We also give due deference to the superior position of the chancellor to view and judge the credibility of the witnesses. *Hamilton, supra.*

In arguing against relocation, David asserts that the children have "history, continuity, and stability in Northwest Arkansas" that will be impossible to recreate in Texas. He also argues that Amber has shown "marked disregard" for court orders by calling him names and that she has ulterior motives in moving to Texas. In response, Amber argues that the factors David discusses were all considered by the circuit court; that the court found that she had legitimate employment-related reasons for relocating; and that she was not relocating for purposes of diminishing David's involvement with the children.

■ To show that the circuit court erred in its relocation decision, David would have to demonstrate that the court erred in applying the factors enumerated in *Hollandsworth,* namely (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference. In this case, the circuit court specifically considered all these factors, however, and found, based on all the evidence, that relocation with their mother was in the best interest of the children. Again, considering the deference we give to the circuit court, due to its superior position to judge the credibility of the witnesses, we find that the circuit court did not clearly err in finding that David failed to rebut the *Hollandsworth* presumption.

Affirmed.

HANNAH, C.J., and BROWN and SHEFFIELD, JJ., dissent.

HANNAH, C.J., dissenting.

I respectfully dissent. The presumption declared in *Hollandsworth* was a presumption of fact "in favor of relocation for custodial parents with primary custody." *Hollandsworth,* 353 Ark. 470, 476, 109 S.W.3d 653, 657 (2003). In other words, the custodial parent enjoys a presumption in favor of relocation. The presumption did not address the best interest of the child. The presumption is based on the custodial parent's right to travel and was intended to assist in resolving conflicts between parents in relocation cases.

When the noncustodial parent objects to the custodial parent's relocation, a con-

flict inevitably emerges between the custodial parent, who has the right to travel and to relocate and desires to take the children with him or her, and the noncustodial parent, who wishes to maintain a close relationship with the children and has misgivings that that bond will be lost.

*Hollandsworth*, 353 Ark. at 476, 109 S.W.3d at 657. In *Hollandsworth*, this court addressed the impact on the custodial parent and his or her right to travel caused by the court of appeals's presumption found in *Hickmon v. Hickmon*, 70 Ark.App. 438, 445, 19 S.W.3d 624, 629 (2000), that "relocation of the custodial parent and the child is detrimental to the best interests of the child."[1] *Hollandsworth*, 353 Ark. at 484, 109 S.W.3d at 663. In response, this court held in *Hollandsworth* that "relocation of a primary custodian and his or her children alone is not a material change in circumstance."[2] *Hollandsworth*, 353 Ark. at 476, 109 S.W.3d at 657. The majority errantly declares that the presumption is one of law, the establishment of a legal burden of proof, and "is not a 'right' that may be claimed by one party or another, nor can it be altered or waived by a party." The burden of proof is not set by the presumption. As already discussed, the presumption is a factual presumption in favor of the custodial parent based on the right to travel.

The burden of proof in deciding child custody cases is unaffected by *Hollandsworth*. In *Hollandsworth*, we noted that in *Hickmon*, the court of appeals, in a relocation case, had errantly "removed the burden from the noncustodial parent to prove that there has been a material change in circumstance justifying a change in custody."[3] *Hollandsworth*, 353 Ark. at 484, 109 S.W.3d at 662. That was never in the province of the court of appeals to do because it is bound by our precedent. Our previously noted statement in *Hollandsworth* that the noncustodial parent bore the burden of proving a material change in circumstance that justifies a change of custody, was a statement of existing law and precedent. Under this court's precedent, the person seeking modification of child custody has always borne the burden of proving that a material change in circumstance justifies a change of custody based on the best interest of the child. *See, e.g., Lloyd v. Butts,* 343 Ark. 620, 625, 37 S.W.3d 603, 606 (2001); *Roberts v. Roberts,* 226 Ark. 194, 196, 288 S.W.2d 948, 950 (1956); *Blake v. Smith,* 209 Ark. 304, 307, 190 S.W.2d 455, 456 (1945).

Nothing about a presumption that relocation is in the best interest of the children would significantly reduce the number of the court hearings required in custody proceedings. It should be noted that any relocation inevitably requires new orders on visitation, contact, and other custody issues.

I also note that the factual presumption declared in *Hollandsworth* is likely redundant. Once custody has been established, stability and continuity dictate that it re-

---

1. The idea that a real advantage must be shown before a move would be allowed, presuming any move is detrimental, is found in *Staab v. Hurst*, 44 Ark.App. 128, 134, 868 S.W.2d 517, 520 (1994).

2. Where the custodial parent relocates does not matter so long as nothing arising from the move constitutes a material change in circumstance that justifies a change in the custo-dy order based on the best interest of the child.

3. Under *Staab*, the custodial parent bore the burden of "demonstrating that some real advantage will result to the new family unit from the move." *Hollandsworth*, 353 Ark. at 483, 109 S.W.3d at 663 (quoting *Staab*, 44 Ark.App. at 134, 868 S.W.2d at 520).

main in place unless a material change in circumstance is shown that reveals a change in custody is in the best interest of the child. *See Lewellyn v. Lewellyn,* 351 Ark. 346, 355, 93 S.W.3d 681, 687 |₁₈(2002); *Digby v. Digby,* 263 Ark. 813, 817, 567 S.W.2d 290, 292 (1978). This law, in effect, provides a presumption that custody will remain as it is until a material change in circumstance that justifies a change in custody based on the best interest of the child, is shown. In other words, unless the noncustodial parent shows a material change in circumstance that justifies a change in custody, based on the best interest of the child, no modification based on relocation will be considered. The factual presumption declared in *Hollandsworth* basically provides the same benefit the custodial parent had under this court's prior precedent.

Further, there cannot be a presumption that relocation is in the best interest of the child because best interest cannot be determined presumptively.[4] When the custodial parent and noncustodial parent are in disagreement, the determination of what is in the best interest of the child requires action by the trial judge who is to "utilize to the fullest extent of his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children." *Alphin v. Alphin,* 364 Ark. 332, 336, 219 S.W.3d 160, 162 (2005). A presumption for or against relocation bypasses the best interest analysis that is the very purpose of the proceeding: to provide a judicial determination of what is in the child's best interest.

The *Hollandsworth* presumption may assist in resolving conflicts between parents, but the presumption will not trump best interest of the child. The unyielding

consideration in custody cases is the welfare of the child. *Brown v. Cleveland,* 328 Ark. 73, 77, 940 S.W.2d |₁₉876, 878 (1997); *Stephenson v. Stephenson,* 237 Ark. 724, 726, 375 S.W.2d 659, 660 (1964). All considerations other than best interest of the child are secondary. *Alphin,* 364 Ark. at 340, 219 S.W.3d at 165 (citing *Hamilton v. Barrett,* 337 Ark. 460, 466, 989 S.W.2d 520, 523 (1999)); *Digby,* 263 Ark. at 816, 567 S.W.2d at 292. The desires of the parents are secondary. *Johnson v. Arledge,* 258 Ark. 608, 613, 527 S.W.2d 917, 920 (1975). Thus, if a material change in circumstance is shown, requiring an analysis of what is in the best interest of the child, then the custodial parent's right to travel will not prevail and decide the issue.

I further note that in the Property Settlement, Custody and Support Agreement, the parties attempted to replace the "so-called presumption in favor of a move ... set forth in *Hollandsworth.*" They were certainly free to do so. The presumption of fact arises from the custodial parent's right to travel, which arises from a person's liberty interest. *Kent v. Dulles,* 357 U.S. 116, 127, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). I agree with Justice Brown that the *Hollandsworth* presumption is based on the right to travel and may be waived. Even fundamental constitutional rights are subject to waiver. *See Eubanks v. Humphrey,* 334 Ark. 21, 28, 972 S.W.2d 234, 237 (1998).

The circuit court erred in finding the presumption that relocation of custodial parents is in the best interest of the children and erred in finding the presumption could not be waived. This case should be reversed and remanded for the circuit court to begin its analysis anew.

BROWN and SHEFFIELD, JJ., join.

---

4. A presumption signifies "that which may be assumed without proof or taken for granted." *Old Republic Ins. Co. v. Martin,* 229 Ark. 1065, 1066, 320 S.W.2d 266, 267 (1959) (quoting *Gray v. Gray,* 199 Ark. 152, 155, 133 S.W.2d 874, 876 (1939)).

BROWN, J., dissenting.

I agree with Chief Justice Hannah that the *Hollandsworth* decision established a presumption in favor of the custodial parent based on that parent's right to travel. *See Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003). We explicitly said in *Hollandsworth* that we did not want to hold a custodial parent prisoner in this state. At the same time, we were clear in *Hollandsworth* that this was not a decision on the ultimate issue of what was in the best interest of the child. Best interest of the children still had to be determined by the court based on the proof presented. The presumption in favor of relocation was merely a starting point.

To drive that point home, we said, "The noncustodial parent should have the burden to rebut the relocation presumption." *Hollandsworth*, 353 Ark. at 485, 109 S.W.3d at 663. We then added that the polestar in making a relocation decision is best interest of the child, and we listed the factors for the court to consider.

What the parties were waiving or "contracting away" in this case was not the decision of what was in the best interest of the children but rather which party would have the burden of proof in court in the event of a proposed relocation. Under the Property Settlement Agreement, Amber Stills would. That is a far cry from contracting away the ultimate issue of what is in the best interest of the children. That issue still remains to be decided by the court.

Which party has the burden of proof to justify relocation in court before the move seems a reasonable item of negotiation for the parties. Clearly, Amber and David Stills thought so, and they agreed that Amber should have the burden of justifying relocation and why that was in the children's best interest. Under *Hollands-*

*worth*, this court said that David Stills would have this burden. But again, the parties agreed in this case that Amber must make her case in court, and I see nothing untoward in such an agreement. Nor do I see how this is a usurpation of the court's role.

This court and the court of appeals have countenanced various contractual agreements by parents in the past and have not considered them to invade the province of the court, even when they affected child support and the child's upbringing. For example, in *Van Camp v. Van Camp*, 333 Ark. 320, 969 S.W.2d 184 (1998), we enforced a father's agreement to provide child support after the age of majority even though Arkansas law provided otherwise. In a second case, the court of appeals upheld the parents' agreement to raise their children in a particular faith—Protestantism. *See Rownak v. Rownak*, 103 Ark.App. 258, 288 S.W.3d 672 (2008).

This court and other jurisdictions have enforced disparate provisions that waived various presumptions. *See, e.g., Wedgeworth v. State*, 374 Ark. 373, 288 S.W.3d 234 (2008) (A criminal defendant may waive his constitutional right to remain silent.); *Jarrett v. State*, 371 Ark. 100, 263 S.W.3d 538 (2007) (The constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial.); *Baker v. Norris*, 369 Ark. 405, 255 S.W.3d 466 (2007) (In pleading guilty, a criminal defendant affirmatively answered the following question: "Now, do you understand that by entering a plea of guilty you do indeed waive your Constitutional rights?"); *see also In re Michael John Reise*, 146 Wash.App. 772, 192 P.3d 949 (2008) (A defendant who pleads guilty specifically waives the presumption of innocence, the right to remain silent, and the right to force the State to prove guilt beyond a reasonable doubt.); *Uribe v.*

*Merchants Bank of New York,* 91 N.Y.2d 336, 670 N.Y.S.2d 393, 693 N.E.2d 740 (1998) (interpreting the term "valuable papers" and enforcing an exculpatory provision with the following language: "Renters expressly waive every presumption of law that loss shall have occurred through Bank's negligence."); *Karkaria v. Karkaria,* 405 Pa.Super. 176, 592 A.2d 64 (1991) (an antenuptial agreement "waiv[ing] all presumption of fraud," rights to equitable distribution, alimony, alimony pendente lite, counsel fees or expenses under the Divorce Code enforceable unless proponent spouse failed to make a full and fair disclosure of his or her financial worth at the time the agreement was executed).

Why a contract provision requiring Amber to support her relocation decision by proof violates some fundamental article of faith is beyond me. Rather, it appears the parties simply agreed, as part of their negotiations, that Amber would have to make her case for relocation and that relocation was in the children's best interest before the court before leaving the state.

I find nothing wrong with this and would reverse the trial court on this basis.

HANNAH, C.J., joins this dissent.